**Corrected**

# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 20-0872V
UNPUBLISHED

| | |
|---|---|
| JEFFREY BALCH,<br><br>                Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND HUMAN SERVICES,<br><br>                Respondent. | Chief Special Master Corcoran<br><br>Filed: December 9, 2022<br><br>Special Processing Unit (SPU); Decision Awarding Damages; Pain and Suffering; Influenza (Flu) Vaccine; Shoulder Injury Related to Vaccine Administration (SIRVA) |

*Edward M. Kraus*, Kraus Law Group LLC, Chicago, IL, for Petitioner.

*Terrence Kevin Mangan, Jr.*, U.S. Department of Justice, Washington, DC, for Respondent.

### DECISION AWARDING DAMAGES[1]

On July 17, 2020, Jeffrey Balch filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that he suffered a shoulder injury related to vaccine administration ("SIRVA") as a result of an influenza ("flu") vaccine he received on November 13, 2018. Petition at 1. The case was assigned to the Special Processing Unit ("SPU") of the Office of Special Masters. Although entitlement was conceded, the parties could not agree on all damages components, so the matter was designated for SPU "Motions Day," and argument was heard on December 2, 2022.

---

[1] Because this unpublished Decision contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

For the reasons set forth below, and as represented during the hearing,[3] I find that Petitioner is entitled to compensation in the amount **$78,906.00**, **representing $77,000.00 for actual pain and suffering, plus $1,906.00 for past unreimbursed expenses.**

### I.     Relevant Procedural History

A little more than a year after the case was filed, Respondent filed his Rule 4(c) Report in November 2021 conceding that Petitioner was entitled to compensation. Respondent's Report at 1. ECF No. 27. In view of Respondent's position, a Ruling on Entitlement was entered in Petitioner's favor. ECF No. 28. Thereafter, the parties attempted to informally resolve the issue of damages, but reached an impasse on an appropriate award. ECF No. 34. I indicated to the parties that I would resolve their dispute as to damages via a hearing, which was held on December 2, 2022.[4]

The parties argued for damages based on briefing completed prior to the motions hearing. Thus, on February 17, 2022, Petitioner filed a damages brief requesting that I award $95,000.00 for pain and suffering. Petitioner's Damages Brief ("Brief") at 1, ECF No. 37. Petitioner stated that he experienced progressive pain, and that while he abided by his physicians' treatment recommendations, he did not achieve relief from his symptoms in the end. *Id.* at 9. Further, Petitioner argued that his injury caused a significant reduction in his quality of life. *Id.*

On March 11, 2022, Respondent filed a damages brief proposing a pain and suffering award of $44,000.00. Respondent's Damages Brief ("Opp.") at 1, ECF No. 38. He argues that Petitioner "sustained a relatively minor SIRVA injury and received little treatment for SIRVA." *Id.* at 5.

### II.    Legal Standard

Compensation awarded pursuant to the Vaccine Act shall include an award "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). Additionally, a petitioner may recover "actual unreimbursable expenses incurred before the date of judgment awarding such expenses which (i) resulted from the vaccine-related injury for which petitioner seeks compensation, (ii) were incurred by or on behalf of the person who suffered such injury,

---

[3] *See* Minute Entry dated December 8, 2022. The transcript of this hearing, which was not yet filed as of the date of this Decision, is hereby incorporated into this Damages Decision by reference.

[4] *See* Amended Hearing Order, filed Nov. 14, 2022 (Non-PDF).

and (iii) were for diagnosis, medical or other remedial care, rehabilitation . . . determined to be reasonably necessary." Section 15(a)(1)(B). Petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Human Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996).

There is no precise formula for assigning a monetary value to a person's pain and suffering and emotional distress. *I.D. v. Sec'y of Health & Human Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) ("Awards for emotional distress are inherently subjective and cannot be determined by using a mathematical formula"); *Stansfield v. Sec'y of Health & Human Servs.*, No. 93-0172V, 1996 WL 300594, at *3 (Fed. Cl. Spec. Mstr. May 22, 1996) ("the assessment of pain and suffering is inherently a subjective evaluation."). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering. *I.D.*, 2013 WL 2448125, at *9 (quoting *McAllister v. Sec'y of Health & Human Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

I may also consider prior pain and suffering awards to aid in the resolution of the appropriate amount of compensation for pain and suffering in each case. *See, e.g.*, *Doe 34 v. Sec'y of Health & Human Servs.*, 87 Fed. Cl. 758, 768 (2009) (finding that "there is nothing improper in the chief special master's decision to refer to damages for pain and suffering awarded in other cases as an aid in determining the proper amount of damages in this case."). And, of course, a special master may rely on his or her own experience adjudicating similar claims. *Hodges v. Sec'y of Health & Human Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993) (noting that Congress contemplated that special masters would use their accumulated expertise in the field of vaccine injuries to judge the merits of individual claims). Importantly, however, it must also be stressed that pain and suffering is not determined based on a continuum. *See Graves v. Sec'y of Health & Human Servs.*, 109 Fed. Cl. 579 (2013).

### III. Appropriate Compensation for Petitioner's Pain and Suffering

#### a. Severity and Duration of Pain and Suffering

Pain and suffering is the sole disputed component of damages herein, so only the legal standards bearing on its calculation are relevant. In this case, awareness of the injury is not contested. The record reflects that at all times Petitioner was a competent adult with no impairments that would impact his awareness of his injury. Therefore, I analyze principally the severity and duration of Petitioner's injury.

When performing this analysis, I review the record as a whole, including the medical records and affidavits filed, written briefs, and argument at the December 2nd Motions Day hearing. I have also considered prior awards for pain and suffering in both SPU and non-SPU SIRVA cases, and rely upon my experience adjudicating these cases. Based upon the above, I note and find the following:

- In his affidavit, signed on July 7, 2020, Petitioner avers that prior to vaccination, he was a triathlete and regularly trained in running, swimming and bicycle riding. Ex. 5 at 1. He further states that his bicycle had been his primary mode of transportation. *Id.*

- Petitioner further avers that he is a published songwriter and musician "with my songwriting process rooted in playing my guitar." Ex. 5 at 1.

- Petitioner received a flu vaccine in his left deltoid on November 13, 2018. Ex. 1 at 3-5.

- In his affidavit, Petitioner states that he experienced shoulder pain on the day of vaccination. Ex. 5 at 2. He further states that "the pain continued to worsen, and within two days I began to be concerned by the level of discomfort I was experiencing." *Id.*

- Petitioner also avers that despite attempts to manage his pain with anti-inflammatory medication and ice, even small arm movements caused sharp shooting pain. Ex. 5 at 2.

- On December 20, 2018 (37 days post-vaccination), Petitioner presented to Dr. Kim Grahl, his primary care physician. Ex. 2 at 65. He reported that although he experienced left arm soreness on both the day of and the day after vaccination, "since Nov[ember] 18th, has had significant pain, has worsened since then." *Id.* On exam, Petitioner was found to have good range of motion as well as "good strength in his hands, wrist." *Id.*

- Petitioner presented to neurologist Afif Hentati, M.D. on January 25, 2019 (73 days post-vaccination). Ex. 2 at 54. The resulting medical note indicates that Petitioner "had been experiencing pain in anterior elbow area and anterior shoulder, and to a lesser extent along the anterior arm." *Id.* Petitioner reported that his pain was "more intense when lifting heavier objects, but lifting 2 lb is sufficient to cause significant pain." *Id.* Although an increase in ibuprofen and rest were recommended, Dr. Hentati indicated that he would "defer to [Petitioner] or an orthopedist for management." *Id.* at 57.

4

- On February 5, 2019 (12 weeks post-vaccination), Petitioner presented to orthopedist Eric Chehab, M.D. Ex. 3 at 5-6. Petitioner reported that his left arm and shoulder pain first occurred "about a few days after a flu vaccine" and described it as "sharp and aching . . . [and] intermittent." *Id.* at 5. Petitioner also reported that the pain was progressive. *Id.* On exam, Petitioner exhibited normal strength, mild impingement signs, and pain with abduction. *Id.* In addition to prescribing physical therapy ("PT"), Dr. Chehab instructed Petitioner to ice his shoulder and to continue using anti-inflammatory medication. *Id.* at 6.

- Petitioner presented to Dr. Grahl on February 8, 2019 (approximately 3 months post-vaccination) for a routine general exam. Ex. 2 at 31. During the course of this appointment, Petitioner complained that his shoulder continued to be a problem and that "it impairs ability to play guitar, do other things involving left arm." *Id.*

- Petitioner underwent an initial PT assessment on April 10, 2019. Ex. 2 at 18-24. Noting that his injury was getting worse, Petitioner rated his pain as a "0" on the 10-point scale at its best, and as a "6" at its worst. *Id.* On exam, Petitioner exhibited normal passive and active range of motion, positive impingement signs, and tenderness to palpitation of the bicep and supraspinatus tendon. *Id.* at 19-20. Petitioner was assessed with "minor but persistent L[eft] anterior shoulder pain." *Id.* at 21.

- At an April 16, 2019 PT appointment (approximately 5 months post-vaccination), Petitioner reported that although he had no symptoms at rest, he continued to have pain when using his left arm to lift or open doors. Ex. 2 at 14.

- The PT note documenting Petitioner's April 24, 2019 session indicates that Petitioner reported "little to no progress with pain, however improved correction of scapular stabilization mechanics which have been helpful in pain reduction." Ex. 2 at 10.

- Petitioner attended an additional session of PT on May 9, 2019 (approximately 6 months post-vaccination). Ex. 2 at 6-8. The note documenting this appointment indicates that Petitioner rated his pain as ranging between a "one" and "two" on a ten-point scale. *Id.* at 6. It was further noted that Petitioner "[c]ontinues to lack [approximately] 50% strength deficit with scapular stabilization but is compliant with HEP [home exercise program] to address strength deficits." *Id.* Petitioner was discharged "with comprehensive HEP secondary to plateau in progress." *Id.* at 7.

- Petitioner presented to Dr. Grahl on September 6, 2019 (approximately 10 months

5

post-vaccination). Ex. 4 at 48-56. While he reported having no shoulder pain at rest, he was noted to have pain if the activity "involves turning a key in the door." *Id.* at 48. Although Dr. Grahl referred Petitioner to an orthopedist, there is no indication that Petitioner followed up in this regard. *Id.* at 49.

- On February 17, 2020, almost a year-and-a-half after vaccination, Petitioner again presented to Dr. Grahl for a routine general exam. Ex. 4 at 33. During this visit, Petitioner reported an inability to use his left hand without "low level pain." *Id.*

- In October of 2020, Petitioner was diagnosed with lung cancer. *See* Ex. 7 at 21; Ex. 8 at 2. During an October 29, 2020 oncology appointment, he reported left shoulder pain. Ex. 7 at 560. It was noted that this symptom was "not new for [Petitioner] but seems to stem from past vaccination injury." *Id.* Petitioner began chemotherapy/radiation therapy on November 9, 2020. Ex. 7 at 21.

- During the Fall of 2020 and Spring of 2021, Petitioner received treatment for issues unrelated to his shoulder. These appointments largely involved Petitioner's lung cancer diagnosis. *See, e.g.,* Ex.7.

- In his supplemental affidavit, signed on December 20, 2021, Petitioner states that "[s]ince being diagnosed with cancer, the pain and limitations in my left shoulder have sometimes been overshadowed by more dire medical concerns but are always present. SIRVA complicates all aspects of managing cancer, making it more difficult to receive and manage treatments, harder to stay fit, and harder to maintain a positive outlook." Ex. 8 at 2.

- Petitioner presented to Dr. Grahl on May 26, 2021 (almost two-and-a-half years post vaccination) for a routine physical examination. Ex. 7-17. The medical note documenting this appointment indicates that he was still receiving treatment for lung cancer. *Id.* at 7. It was further noted that although Petitioner participated in "some" biking and swimming, he experienced limited range of motion of his left shoulder when getting into and out of the pool. *Id.* at 7-8.

The case record overall establishes that Petitioner experienced a moderate shoulder injury serious enough for him to promptly seek medical care, but that later only required conservative treatment. Petitioner never underwent an MRI, received no cortisone injections, and never required surgery. Moreover, Petitioner only attended four sessions of physical therapy, and only ever treated his shoulder symptoms with over-the-counter medication.

Although it is true that Petitioner reported "significant pain" that was sharp, aching

and intermittent at medical appointments in late 2018 to early 2019, by his final physical therapy session on May 9, 2019 (almost six months post-vaccination), he reported that his current pain ranged between a "one" and a "two" on a ten-point pain scale. And while Petitioner continued to report shoulder pain during subsequent physical exams in September 2019 and February 2020, this symptom only occurred with movement and was characterized as "low level."

However, another factor relevant to pain and suffering is the effect that a petitioner's shoulder injury has had on his or her personal life. In this case, Petitioner has credibly explained how his injury impacted his active lifestyle. Most notably, Petitioner's condition interfered with his ability to play guitar, swim, and bike - activities which Petitioner has stated are central to his sense of well-being. In his affidavit, Petitioner testified that the inability to participate in these activities "complicate[d] all aspects of managing [my] cancer, making it more difficult to receive and manage treatments, harder to stay fit, and harder to maintain a positive outlook." Ex. 8 at 2. I give some weight to these contentions, while comparing them to the overall medical record (which corroborated a SIRVA requiring limited treatment).

Despite the impact that Petitioner's injury had on his daily routine and psychological resilience, I find that the $95,000.00 sum requested by Petitioner is a bit high. Nevertheless, because Respondent failed to offer comparables in support of his proposal for an award of $44,000.00 in his briefing, I use the amount sought by Petitioner as the starting point in my calculation of an appropriate award.

Petitioner argues that this case is comparable to several cases, including *Cooper*, *Derosiers*, and *Acetta*,[5] which resulted in awards ranging from $95,000.00 to $110,000.00 for past pain and suffering. However, I consider these cases to involve more concrete aggravating factors (such as a limitation of treatment options due to pregnancy), or greater severity and/or duration than in this case. But Petitioner also offers *T.E.* and *Decoretz* as comparables, which resulted in awards of $70,000 and $75,000. *T.E. v. Sec'y of Health & Human Servs.*, No. 19-0633V, 2021 WL 2935751 (Fed. Cl. May 7, 2021); *Decoretz v. Sec'y of Health & Human Servs.*, No. 19-0391V, 2021 WL 2346468 (Fed. Cl. Spec. May 7, 2021).

While an award close to these amounts is justified in this case, I find that Petitioner's course of treatment is most similar to the experience of the petitioner in *Welch* (cited by Respondent at the hearing), where an award of $55,000 was granted. *Welch v.*

---

[5] *Cooper v. Sec'y of Health & Human Servs.*, No. 16-138V, 2018 WL 6288181 (Fed. Cl. Spec. Mstr. Nov. 7, 2018)(awarding $110,000 for pain and suffering); *Desrosiers v. Sec'y of Health & Human Servs.*, No. 16-0224V, 2017 WL 5507804 (Fed. Cl. Spec. Mstr. Sept. 19, 2017)(awarding $85,000 for pain and suffering); *Acetta v. Sec'y of Health & Human Servs.*, No. 17-1731V, 2021 WL 1718202 (Fed. Cl. Spec. Mstr. March 31, 2021)(awarding $95,000 for pain and suffering).

*Sec'y of Health and Human Services*, No. 18-0660V, 2021 WL 4612654 (Fed. Cl. Spec. Mstr. Sept. 21, 2021). The *Welch* petitioner experienced a relatively mild SIRVA which did not necessitate surgery or lengthy overall treatment. Moreover, she did not receive any cortisone injections, participated in only six sessions of physical therapy, and used over-the-counter medication for pain relief. However, although that petitioner waited 110 days before seeking care for her shoulder, here Mr. Balch sought treatment a little over a month after vaccination – thus indicating that he experienced a greater level of initial pain. This difference, paired with the significant impact that Petitioner's injury had on his daily life and well-being, militates in favor of a higher award.

Accordingly, balancing the severity and overall course of Petitioner's moderate SIRVA injury with the personal hardships that he experienced as a result, and considering the arguments presented by both parties at the hearing, a review of the relevant caselaw and the written record, I find that $77,000.00 in total compensation for actual pain and suffering is reasonable in this case.

### b. Award for Past Unreimbursable Expenses

Petitioner also requests $1,906.00 in past unreimbursable expenses. Brief at 1. Respondent does not dispute this sum. Opp. at 1.[6] Therefore, Petitioner is awarded this amount without adjustment.

### Conclusion

Based on the record as a whole and arguments of the parties, **I award Petitioner a lump sum payment of $78,906.00**, (representing $77,000.00 for Petitioner's actual pain and suffering, and $1,906.00 for unreimbursable medical expenses) **in the form of a check payable to Petitioner, Jeffrey Balch.** This amount represents compensation for all damages that would be available under Section 15(a).

The Clerk of the Court is directed to enter judgment in accordance with this decision.[7]

---

[6] In his brief, Petitioner erroneously indicated that his out-of-pocket medical expenses totaled $1,096.00. However, in an informal communication, Petitioner stated that the correct figure is $1,906.00. *See* Informal Communication (Remark), entered on December 12, 2022. Respondent agrees that the higher sum is correct. *Id.*

[7] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.

**IT IS SO ORDERED.**

                                    **s/Brian H. Corcoran**
                                    Brian H. Corcoran
                                    Chief Special Master